73 F.3d 1310
 Dennis Wayne COCHRAN, Plaintiff-Appellant,
United States of America, Intervenor,
v.
E.C. MORRIS, Deputy Director of Corrections; David K.
Smith, Warden, Buckingham; Bobby Soles, Assistant
Warden; C.N. Lewis, Chief of Security,
Defendants-Appellees,
Coalition for the Free Exercise of Religion, Amicus Curiae.
 No. 94-6014.
 United States Court of Appeals,
Fourth Circuit.
 Argued Sept. 26, 1995.
Decided Jan. 26, 1996.
 
 ARGUED: William Ray Baldwin, III, Hirschler, Fleischer, Weinberg, Cox & Allen, Richmond, Virginia, for Appellant. Patricia Ann Millett, Civil Division, United States Department Of Justice, Washington, D.C., for Intervenor. Mark Ralph Davis, Assistant Attorney General, Office of the Attorney General, Richmond, Virginia, for Appellees. ON BRIEF: Steven H. Goldblatt, Director, Bonnie I. Robin-Vergeer, Supervising Attorney, Appellate Litigation Clinical Program, Georgetown University Law Center, Washington, D.C., for Appellant. Frank W. Hunger, Assistant Attorney General, Helen F. Fahey, United States Attorney, Michael Jay Singer, Civil Division, United States Department Of Justice, Washington, D.C., for Intervenor. James S. Gilmore, III, Attorney General, Office of the Attorney General, Richmond, Virginia, for Appellees. Marc D. Stern, American Jewish Congress, New York City, for Amicus Curiae.
 Before ERVIN, Chief Judge, and RUSSELL, WIDENER, HALL, MURNAGHAN, WILKINSON, WILKINS, NIEMEYER, HAMILTON, LUTTIG, WILLIAMS, MICHAEL, and MOTZ, Circuit Judges, sitting en banc.
 Affirmed by published opinion. Judge WILKINSON wrote the majority opinion, in which Judges RUSSELL, WIDENER, HALL, WILKINS, NIEMEYER, HAMILTON, LUTTIG, AND WILLIAMS joined. Judge MICHAEL wrote a dissenting opinion, in which Chief Judge ERVIN and Judges MURNAGHAN and MOTZ joined.
 OPINION
 WILKINSON, Circuit Judge:
 
 
 1
 We granted en banc review in this case to consider whether the district court properly dismissed appellant Dennis Wayne Cochran's in forma pauperis complaint. Because we find that the court dismissed Cochran's complaint pursuant to 28 U.S.C. Sec. 1915(d), its judgment is entitled to great deference. Nasim v. Warden, Maryland House of Correction, 64 F.3d 951, 954-55 (4th Cir.1995) (en banc); Adams v. Rice, 40 F.3d 72, 74 (4th Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 1371, 131 L.Ed.2d 227 (1995). Guided by the standards set forth in our recent decisions, we affirm.
 
 I.
 
 2
 This case is one of a series that Dennis Wayne Cochran has generated from his prison cell. The lawsuits, filed in both the Western and Eastern districts of Virginia, all stem from a single incident that occurred when Cochran was incarcerated at the Buckingham Correctional Center (BCC). A fellow prisoner stabbed Cochran in a stairwell in December of 1990. After the assault, BCC officials placed Cochran in protective custody.
 
 
 3
 The record does not fully disclose what transpired after Cochran was placed in protective custody. What is clear is that Cochran objected to BCC's treatment of him. According to Cochran, he and BCC officials had a succession of disputes about several subjects, including Cochran's investigation of security in the stairwells at BCC, his continued placement in protective custody, his on-again, off-again request for a kosher diet, and his transfer to the Powhatan Correctional Center (PCC) in late April, 1992.
 
 
 4
 As a result of the assault and ensuing disputes, Cochran filed a number of lawsuits against his jailers. In March of 1992 Cochran brought two suits in the Western District alleging a denial of equal protection and deliberate indifference by BCC officials based on their failure to post security guards in the stairwells. Cochran sought to file these cases in forma pauperis; the court assessed a partial filing fee of $40 for each case pursuant to Evans v. Croom, 650 F.2d 521 (4th Cir.1981), cert. denied, 454 U.S. 1153, 102 S.Ct. 1023, 71 L.Ed.2d 309 (1982). At the same time, the court advised Cochran he would have twenty days to respond to defendants' motion for summary judgment. Soon after he received the notices regarding filing fees and summary judgment, Cochran moved to withdraw the suits without prejudice. Cochran, who was transferred from BCC to PCC on April 29, explained that his legal materials were "disarranged and missing" as a result of the transfer and he thus wanted to withdraw his complaints. The court granted Cochran's motion.
 
 
 5
 The record also discloses portions of the procedural history of at least two other lawsuits Cochran filed in 1992. Unlike the previous cases, Cochran brought these suits in the Eastern District. One alleged a denial of adequate medical care, and the other asserted improper confinement in segregation. The record does not reveal the final disposition of these actions.[1]
 
 
 6
 One other suit Cochran filed in 1992 is especially pertinent to this appeal. In June, 1992, Cochran submitted a Sec. 1983 action in the Eastern District (Cochran I ), which contained allegations resembling those in the case now before the court. The Cochran I complaint charged that prison officials violated Cochran's constitutional right to the free exercise of religion when they denied him a kosher diet. This refusal to provide kosher meals was connected, in a roundabout way, to the assault and Cochran's subsequent placement in protective custody. Allegedly forced to choose between his kosher diet at BCC and transfer to another prison where he would be separated from his attacker, Cochran asserted that he initially chose a transfer. After consulting a rabbi, however, Cochran alleged that he changed his mind while still at BCC and sought to revoke his waiver of a kosher diet. BCC officials denied his request; Cochran was transferred to PCC where he was unable to obtain a kosher diet. This chain of events formed the basis for Cochran's free exercise claim.
 
 
 7
 In July, 1993, the district court granted defendants' motion for summary judgment in Cochran I. Cochran v. Murray, No. 92-1021 (E.D.Va. July 7, 1993). Notably, the district court observed that Cochran's change of heart about his need for a kosher diet occurred only after, not before, he transferred to PCC. In this context, the court decided that it was permissible to deny Cochran's request to transfer back to BCC from PCC in order to receive a kosher diet; the court also determined that Virginia's accommodation of kosher diets at one institution satisfied the constitution.
 
 
 8
 On November 17, 1993, this court affirmed the district court's decision in Cochran I. 12 F.3d 204 (Table), No. 93-6828 (4th Cir.1993). One day earlier, November 16th, the President signed the Religious Freedom Restoration Act (RFRA). Pub.L. 103-141, 107 Stat. 1488 (1993). Cochran unsuccessfully cited this new statute in his subsequent attempts to reverse Cochran I. Cochran v. Murray, No. 93-6828 (4th Cir.1994) (rehearing denied); --- U.S. ----, 114 S.Ct. 1658, 128 L.Ed.2d 376 (1994) (certiorari denied); --- U.S. ----, 114 S.Ct. 2730, 129 L.Ed.2d 852 (1994) (rehearing denied).
 
 
 9
 In September, 1993, just two months after the Eastern District dismissed Cochran I and while he was appealing its decision, Cochran brought the Sec. 1983 action presently before this court. (Cochran II ). This time, however, he brought suit in the Western District. The factual recitation contained in the Cochran II complaint largely repeated the facts alleged in Cochran I regarding denial of a kosher diet, and it also contained new allegations of official misconduct. On appeal, Cochran asserts four claims: denial of the free exercise of religion; denial of access to the courts; retaliatory prison transfer; and due process violations.
 
 
 10
 Defendants moved to transfer Cochran II to the Eastern District of Virginia, which Cochran opposed. In support of their motion, defendants called the court's attention to the Cochran I court's resolution of the free exercise claim and a pending and apparently related action in the Eastern District. Noting that "[i]nasmuch as plaintiff has raised many of the same claims in previous actions filed in the Eastern District," the court granted the motion.
 
 
 11
 After transfer to the Eastern District, Judge Hilton dismissed Cochran's complaint sua sponte and before responsive pleadings had been filed. Judge Hilton had also presided over, and dismissed, at least two other actions Cochran filed; this court affirmed those dismissals. Cochran v. Williams, 8 F.3d 817 (Table), No. 93-6625 (4th Cir.1993); Cochran v. Bair, 905 F.2d 1528 (Table), No. 89-6327 (4th Cir.1990). He had also dismissed Cochran I. His ruling in Cochran II stated that:
 
 
 12
 Many of plaintiff's claims have been previously ruled on in this Court's Order of July 7, 1993 [ Cochran I ]. The plaintiff now makes further complaints regarding the defendants, none of which state a claim for which relief can be granted, and this case is DISMISSED.
 
 
 13
 Cochran then filed a motion under Rule 60(b), in which he cited RFRA's passage as a basis to vacate the judgment of dismissal. The district court denied his motion.
 
 
 14
 Cochran appealed and a panel of this court heard argument. While the case was under submission, a majority of the court voted to hear it en banc.
 
 II.
 
 15
 We must first ascertain the basis for the district court's dismissal of Cochran's complaint. Cochran notes that the district court used the words "none of which state a claim for which relief can be granted" in dismissing his sundry claims. He contends that the district court's dismissal must necessarily have been pursuant to Fed.R.Civ.P. 12(b)(6). Cochran then argues that the dismissal was improper under Rule 12(b)(6) because it was sua sponte. See, e.g. Ricketts v. Midwest Nat'l Bank, 874 F.2d 1177, 1185 (7th Cir.1989) (sua sponte dismissals improper under 12(b)(6)); McKinney v. Oklahoma, 925 F.2d 363, 365 (10th Cir.1991) (sua sponte dismissals under 12(b)(6) improper save in limited circumstances).
 
 
 16
 We think Cochran's view of the district court's dismissal ruling unduly formalistic. The district court's action must be viewed against the nature of Cochran's complaint. Cochran filed his complaint under 28 U.S.C. Sec. 1915(a), which allows district courts to waive costs and fees in actions filed by in forma pauperis litigants. Section 1915(d), in turn, permits district courts to dismiss suits filed pursuant to Sec. 1915(a) if "the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." 28 U.S.C. Sec. 1915(d). Both the authority to accept and to dismiss such complaints thus arise from a single statute. The most logical basis for the dismissal of a Sec. 1915(a) complaint, then, is the authority granted by Sec. 1915(d).
 
 
 17
 It is clear for several reasons that the district court intended to exercise its authority under Sec. 1915(d). First, the sua sponte nature of the court's dismissal was consistent with a ruling under Sec. 1915(d) rather than Rule 12(b)(6), since sua sponte dismissals are freely permitted under the former provision. Denton v. Hernandez, 504 U.S. 25, 32, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992) (observing that Sec. 1915(d) dismissals are "frequently made sua sponte before the defendant has ever been asked to file an answer."); White v. White, 886 F.2d 721 (4th Cir.1989) (affirming sua sponte Sec. 1915(d) dismissal). Second, the peremptory nature of the dismissal reveals the clear view of the district court that this litigant was abusing the right of free court access granted under Sec. 1915(a) and that his claims were manifestly non-meritorious. Indeed, it is impossible to square the abbreviated treatment given this series of claims with what one would expect from a district judge acting pursuant to Rule 12(b)(6). The abbreviated treatment is, however, entirely consistent with what Congress envisioned under Sec. 1915(d)--namely, authorizing dismissal of insubstantial claims without requiring defendants to file responsive pleadings. Neitzke v. Williams, 490 U.S. 319, 324, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989).
 
 
 18
 Finally, the dismissal in this case can be affirmed under Sec. 1915(d) under the well-recognized authority of courts of appeals to uphold judgments of district courts on alternate grounds. We have freely exercised this authority in actions brought by prison inmates. In Brown v. Briscoe the nominal ground for dismissal by the trial court was for failure to state a claim. 998 F.2d 201, 202 (4th Cir.1993). On appeal, this court affirmed the dismissal as proper under Sec. 1915(d). Id. Similarly, in White v. Gregory the trial court dismissed an in forma pauperis complaint based on factual frivolity. On appeal, we affirmed the dismissal on the alternate ground that the claim was indisputably meritless as a matter of law. 1 F.3d 267, 269 (4th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 931, 127 L.Ed.2d 223 (1994). Given what we perceive to be the district court's own clear intentions in dismissing this complaint, we have even less difficulty addressing its action as a Sec. 1915(d) dismissal.[2]
 
 III.
 
 19
 The standards for review of Sec. 1915(d) dismissals are well established. As noted, the statute allows dismissal if the district court is "satisfied that the action is frivolous or malicious." 28 U.S.C. Sec. 1915(d). This standard encompasses complaints that are either legally or factually baseless. Neitzke, 490 U.S. at 325, 327, 109 S.Ct. at 1831-32, 1832-33. The statutory language dictates a high degree of deference to the discretion of district courts. A claim can be dismissed whenever a district court is "satisfied" the claim is frivolous. Moreover, the term frivolousness itself contemplates deference because "as a practical matter, it is simply not susceptible to categorical definition." Adams, 40 F.3d at 74. Deference to district court dismissals under Sec. 1915(d) is especially appropriate when the complaint arises in the prison setting. It is here that the danger of federal interference with the performance of core state functions is acute, Sandin v. Conner, --- U.S. ----, ---- - ----, 115 S.Ct. 2293, 2299-2300, 132 L.Ed.2d 418 (1995), and it is here that the "discretion granted to district judges to screen out meritless cases," Nasim, 64 F.3d at 953, is necessary to prevent the abuse of free court access by litigants who possess both time and dissatisfactions in abundance.
 
 
 20
 We find no reason in this case to depart from our general obligation of deference to the district court. Denton, 504 U.S. at 33, 112 S.Ct. at 1733-34; Nasim, 64 F.3d at 954-55; White, 1 F.3d at 269; Brown, 998 F.2d at 203. The record reveals that Cochran filed numerous civil rights actions--five, not including the instant case--in different jurisdictions, many of them apparently arising from the same events. A plaintiff's past litigious conduct should inform a district court's discretion under Sec. 1915(d). See In re McDonald, 489 U.S. 180, 109 S.Ct. 993, 103 L.Ed.2d 158 (1989) (per curiam) (denying leave to proceed in forma pauperis based, in part, on abusive number of filings).
 
 
 21
 Cochran, moreover, did more than file numerous lawsuits. He attempted to escape the final decision of one federal court by filing in another and he resisted attempts to transfer the latter suit, Cochran II, to the Eastern District, where Cochran I was decided. Cochran also withdrew two lawsuits in 1992 only after he was ordered to pay a partial filing fee and respond to summary judgment motions. A district court could consider these withdrawals as evidence that Cochran lacked commitment to his claims, an implication that is strengthened by his failure to pay filing fees ordered by trial courts. Cochran v. Morris, No. 94-6971, 1995 WL 26703 (4th Cir.1995); Cochran v. Williams, No. 93-6625, 1993 WL 431175 (4th Cir.1993). Moreover, the instant complaint contained a conglomeration of contentions, one of which had already been decided, and others of which were utterly conclusory. Judge Hilton had presided over Cochran I, as well as other earlier actions filed by plaintiff. He was uniquely positioned to assess Cochran's latest filing, and he did not abuse his discretion in dismissing it without extended discussion.
 
 IV.
 
 22
 Turning to the particular claims, we find that the district court soundly exercised its discretion.A.
 
 
 23
 Cochran's free exercise claim, arising from prison officials' failure to provide him with a kosher diet, was properly dismissed. The district court observed that this same claim was decided adversely to Cochran in Cochran I. Its earlier opinion reflected as much, noting that "Plaintiff brings this action against Edward Murray, Director of the Virginia Department of Corrections ("VDOC"), E. Morris, Deputy Director of VDOC, and David Williams, former Warden at PCC, alleging that his First Amendment rights were violated because he was not provided with a kosher diet at PCC." The district court then proceeded to resolve this very claim. Section 1915(d) is aimed at the dismissal of "frivolous, malicious, or repetitive lawsuits." Neitzke, 490 U.S. at 324, 109 S.Ct. at 1831 (emphasis added); see also Todd v. Baskerville, 712 F.2d 70, 74 (4th Cir.1983). The district court did not abuse its discretion when it rejected Cochran's attempt to relitigate this claim.[3]
 
 B.
 
 24
 The district court also properly dismissed Cochran's claim that prison officials infringed his right of access to the courts. In making such a claim, a prisoner cannot rely on conclusory allegations. White, 886 F.2d at 723-24. Specificity is necessary so that prison officials are not required to file unnecessary responses to speculative allegations. A prisoner must also identify an actual injury resulting from official conduct. Strickler v. Waters, 989 F.2d 1375, 1382-85 (4th Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993). A showing of injury is required in order to avoid adjudication of trivial claims of deprivation.
 
 
 25
 Cochran failed to meet these standards. For the most part, the complaint was conclusory, alleging simply that prison officials "conspired to circumvent plaintiff's access to the courts." He did, however, contend that in response to his investigation of stairwell security, prison officials both transferred prisoners who had provided him with damaging affidavits and "confiscated and destroyed" his legal documents during his prison transfer. Significantly, Cochran failed to make comparable allegations in earlier court filings that he submitted after his transfer; in one document he merely stated that his legal papers were "disarranged and missing" and in another he neglected to mention the alleged conspiracy altogether.
 
 
 26
 Cochran's complaint was primarily deficient, however, because he failed to assert any actual injury resulting from prison officials' conduct. Strickler, 989 F.2d at 1384 (referring to the "basic requirement that [plaintiff] show specific harm or prejudice from the allegedly denied access.") Cochran claimed that he was injured because he was prevented from filing lawsuits. This statement from such an inveterate litigator must have struck Judge Hilton as absurd. On appeal, counsel has supplemented this bare declaration by claiming that Cochran sustained injury when he was allegedly forced to withdraw two lawsuits without prejudice. Cochran did not assert this injury in his complaint, however, and the withdrawal of complaints on plaintiff's motion and without prejudice does not rise in any event to the level of actual injury that Strickler requires.
 
 C.
 
 27
 The district court also did not abuse its discretion by dismissing Cochran's claims of retaliation. In the prison context, we treat such claims with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Adams, 40 F.3d at 74.
 
 
 28
 Cochran's complaint charged that every single action by prison officials represented either a conspiracy or a retaliation, including "using the inmate who stabbed [Cochran] as a pawn," "punish[ing] [Cochran] with a long term segregation assignment," and "permitt[ing] institutional documents to be falsified." This extended litany of conspiratorial activity casts serious doubts on Cochran's claims. The assortment of vague accusations also fails to demonstrate, as is required, that each retaliatory act violate some constitutional right of an inmate or constitute punishment for the exercise of a constitutional right. Id. at 75.
 
 
 29
 On appeal, counsel transforms these loose accusations into allegations of two specific acts of retaliatory prison transfer (intrastate transfer and pending interstate transfer) to punish Cochran for filing grievances and lawsuits. Of course, the district judge did not have the benefit of this post-hoc reconstruction of Cochran's complaint. In addition, with respect to the intrastate transfer, Cochran's complaint acknowledged that he consented to the transfer from BCC. While the complaint alleged that Cochran changed his mind before his transfer, this assertion directly conflicted with the statement in the Cochran I opinion that Cochran's turnabout occurred only after he was transferred. The district court was entitled to consider its earlier conclusion in related litigation to hold that Cochran's allegation was factually frivolous.
 
 
 30
 The second claim of retaliatory interstate transfer cannot fairly be wrested from the complaint Cochran submitted. The complaint alleged that "defendants transferred plaintiff in retaliation for filing law suits" but, given that much of the complaint discussed the intrastate transfer, this allegation was not sufficiently linked to a decision to transfer Cochran out-of-state. A district judge is not required to piece together causes of action from fragmentary factual recitations. To the extent that claims could be constructed from the complaint, Cochran's grievances with the interstate transfer appeared to relate not to retaliation but to vague due process violations.
 
 D.
 
 31
 The district court also did not abuse its discretion in dismissing the plaintiff's procedural due process claim, which is based on alleged breaches of basic due process requirements at a hearing on Cochran's interstate transfer. On appeal, counsel have vigorously disputed which precise set of regulations govern Cochran's transfer and whether they convey a liberty interest. See Department of Corrections, Division of Adult Institutions Operating Procedure ("DOP") 820 (Interstate Corrections Compact). The state asserts that Cochran's transfer is a general compact transfer and that the applicable regulations use discretionary language. DOP 820 Part I, Sec. III(D). Cochran contends, on the other hand, that the transfer is an administrative compact transfer; the pertinent regulations, he argues, contain mandatory language. Id. at Part I, Sec. III(E), (F). This whole debate, however, misses the point. Cochran's complaint did not even suggest that the relevant prison regulations conferred a liberty interest, which is a necessary element of a procedural due process claim. Meachum v. Fano, 427 U.S. 215, 223-24, 96 S.Ct. 2532, 2537-38, 49 L.Ed.2d 451 (1976); Slezak v. Evatt, 21 F.3d 590, 593 (4th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 235, 130 L.Ed.2d 158 (1994). Moreover, a claim that state regulations created a liberty interest in freedom from interstate transfer must fail given the Supreme Court's admonition that such liberty interests only inhere in regulations that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, --- U.S. at ----, 115 S.Ct. at 2300. The state regulations here are of general application and contemplate routine inmate transfers. They thus do not, by definition, impose "atypical and significant hardship on the inmate" as defined in the Sandin decision.
 
 V.
 
 32
 Our dissenting colleagues pass up a fine opportunity to support a district court in its dismissal of a frivolous prisoner complaint. Although the dissent purports to interpret the intention of the district court with respect to Federal Rule 12(b)(6) and Sec. 1915(d), it ignores the court's foremost intention to end litigation by an inmate who has been afforded the privilege of free access to the courts and who has just as plainly abused it. Overlooking entirely the litigious background of the litigant and the factors discussed in section II of the majority opinion, the dissent would even preclude the district court from stating on remand that its intention in dismissing was other than that which the dissent has selected for it. The upshot of an approach in which trial court process is never quite sufficient and district court explanations never quite satisfactory is to involve the federal courts ever more deeply and more dubiously in state prison practices. The dissent in the end does not contend that Cochran's free exercise claim survives res judicata. It does not contend that any of his remaining claims possess any merit. It simply elects to keep the litigation going. We think that Congress, on the other hand, intended that such litigation end. We hold that the district court was right to dismiss these claims, and we affirm its dismissal of the complaint as well as the judgment that it be with prejudice.
 
 
 33
 AFFIRMED.
 
 MICHAEL, Circuit Judge, dissenting:
 
 34
 Bound and determined to label another prisoner complaint as "frivolous," the majority passes up a good chance for this circuit to adopt a sensible rule that would require notice and an opportunity to respond prior to a sua sponte dismissal on the merits. To avoid a remand, the majority first transforms the district judge's dismissal on the merits into a dismissal under Sec. 1915(d). Then, alternatively, the majority applies Sec. 1915(d) in the first instance, ignoring the Supreme Court's instruction in Boag v. MacDougall, 454 U.S. 364, 365 n. *, 102 S.Ct. 700, 701 n. *, 70 L.Ed.2d 551 (1982), that Sec. 1915(d) must be invoked first by the district court. The result does nothing to encourage precision in the district courts, and it will make more work for us in the long run. I, therefore, respectfully dissent.
 
 I.
 
 35
 The majority's effort to transform the December 2, 1993, dismissal order into one of the Sec. 1915(d) variety has a fundamental flaw: it does not take the district judge at his word. When the words of the dismissal order are measured against the words of Fed.R.Civ.P. 12(b)(6) and Sec. 1915(d), it becomes clear that the district judge dismissed Cochran's complaint on two grounds: res judicata and failure to state a claim. Section 1915(d) is not in the picture.
 
 The dismissal order provides:
 
 36
 This case comes before the Court after having been transferred from the Western District of Virginia, Roanoke Division. Many of plaintiff's claims have been previously ruled on in this Court's Order of July 7, 1993. The plaintiff now makes further complaints regarding the defendants, none of which states a claim for which relief can be granted, and this case is DISMISSED.
 
 
 37
 The order's plain language indicates that Cochran's free exercise claim, which had been "previously ruled on" in the July 7, 1993, order, was dismissed on res judicata grounds. Cochran's "further complaints" were dismissed because "none ... states a claim for which relief can be granted." This language tracks Rule 12(b)(6) ("failure to state a claim upon which relief can be granted") almost verbatim. Not only did the district judge track the language of Rule 12(b)(6), but he also avoided either a citation to Sec. 1915(d) or the use of its rememberable language (court may dismiss "if satisfied that the action is frivolous or malicious").
 
 
 38
 The experienced district judge here has been steeped in in forma pauperis prisoner litigation. I expect, therefore, that he was aware of the guidelines for Sec. 1915(d) dismissals. The Supreme Court has instructed district courts to provide a brief explanation when dismissing under Sec. 1915(d) "to facilitate intelligent appellate review." Boag, 454 U.S. at 365 n. *, 102 S.Ct. at 701 n. *. See also Denton v. Hernandez, 504 U.S. 25, 33-35, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); Besecker v. Illinois, 14 F.3d 309, 310 (7th Cir.1994) (per curiam); Levoy v. Mills, 788 F.2d 1437, 1438 (10th Cir.1986); Sills v. Bureau of Prisons, 761 F.2d 792, 794 (D.C.Cir.1985). The brief explanation should include a reference to the statute or its standard for dismissal. Harris v. Johnson, 784 F.2d 222, 224 (6th Cir.1986) ("[I]f a dismissal is to occur sua sponte under the limited exceptions provided by section 1915(d), the trial court must explicitly state that the statute is being invoked and that the complaint is being dismissed as frivolous.").
 
 
 39
 The district judge's failure to use the "frivolous" designation or even to cite Sec. 1915(d) was deliberate, I believe, for one reason: he intended to dismiss on the merits, thereby blocking Cochran from filing a paid complaint later. "[A] Sec. 1915(d) dismissal is not a dismissal on the merits, but rather an exercise of the court's discretion under the in forma pauperis statute." Denton, 504 U.S. at 34, 112 S.Ct. at 1734. "[T]he dismissal does not prejudice the filing of a paid complaint making the same allegations." Id. See also Brown v. Briscoe, 998 F.2d 201, 204 (4th Cir.1993).
 
 
 40
 The district judge's words--dismissing Cochran's second free exercise claim as "previously ruled on" and dismissing his "further complaints" because "none ... states a claim"--should be allowed to carry their usual consequence of a judgment on the merits. With his choice of language the judge surely did not intend to permit Cochran to refile a paid complaint asserting his free exercise claim a third time and his other claims a second time. Yet that would be quite possible under a Sec. 1915(d) dismissal, the designation chosen by the majority.
 
 
 41
 It is best to give the judge's order its most natural reading even if, as we see next, that would require a remand.
 
 II.
 
 42
 Accepting the obvious, that the sua sponte dismissal was based on res judicata and failure to state a claim, does force a fundamental question. Is it proper to grant a sua sponte dismissal on the merits without notice and an opportunity to respond? I would hold that such a dismissal cannot be permitted.[1]
 
 
 43
 There are compelling reasons of fairness and efficiency for disallowing sua sponte dismissals on the merits entered without notice and an opportunity to respond. The Eighth Circuit has explained:
 
 
 44
 When unaccompanied by notice to the plaintiffs and an opportunity to respond, sua sponte dismissals deprive plaintiffs of the chance to develop legal arguments or clarify factual allegations, undercut the adversarial process, and render the appellate record less complete for review.
 
 
 45
 Murphy v. Lancaster, 960 F.2d 746, 748 (8th Cir.1992) (per curiam). For these reasons, a majority of the circuits that have addressed the question in the context of Rule 12(b)(6) dismissals have adopted per se rules prohibiting such dismissals. They enforce the prohibition by automatically vacating the dismissals and remanding for reconsideration on the merits after notice. See Thomas v. Scully, 943 F.2d 259, 260 (2d Cir.1991) (per curiam); Street v. Fair, 918 F.2d 269, 272 (1st Cir.1990) (per curiam); Roman v. Jeffes, 904 F.2d 192, 196 (3d Cir.1990); Ricketts v. Midwest Nat'l Bank, 874 F.2d 1177, 1183-85 (7th Cir.1989); Tingler v. Marshall, 716 F.2d 1109, 1110-12 (6th Cir.1983); Jefferson Fourteenth Assocs. v. Wometco de Puerto Rico, Inc., 695 F.2d 524, 526-27 (11th Cir.1983). Although these courts announced their rules in the context of Rule 12(b)(6) dismissals, their holdings embrace any dismissal on the merits, such as one on res judicata grounds. See also U.S. Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n, 873 F.2d 731, 736 (4th Cir.1989)(requiring notice and an opportunity to respond before a court may sua sponte grant summary judgment).[2]
 
 
 46
 This case powerfully illustrates the need for a prohibition against dismissals on the merits entered without notice and an opportunity to respond. Eleven days after his complaint was dismissed, Cochran filed a Rule 60(b) motion to vacate the judgment, asserting that (the newly-enacted) RFRA applied to his facts. The district court denied the Rule 60(b) motion, but because Cochran did not appeal that ruling, the majority does not reach his RFRA argument or the question of RFRA's constitutionality. Unfortunately, court-appointed counsel for Cochran, counsel for the Commonwealth, counsel for the United States (as intervenor) and counsel for an amicus curiae spent considerable public and private resources briefing and arguing the RFRA issue, first to a panel and then to the en banc court. These resources and valuable court time were wasted on what counsel honestly believed was an issue in the case. This waste might have been avoided if the district judge had notified Cochran of his intention to dismiss and offered Cochran an opportunity to respond. Then Cochran could have advised the district court of his reliance on RFRA, and the judge could have ruled on his claims, taking RFRA into account. Under that scenario, the RFRA claim would be before us and we could dispose of it once for all. Surely no one doubts that Cochran's RFRA claim must be dealt with eventually, and it would have been more efficient and far less costly to have decided it now.
 
 
 47
 Under the circumstances, I would vacate the judgment and remand this case with the instruction that the district judge reconsider his proposal to dismiss after Cochran has had the opportunity to respond.
 
 III.
 
 48
 The majority must sense that it will be hard to sell the order as anything other than a dismissal on the merits. I say this because the majority feels compelled to hold that the dismissal may in any event be upheld on alternate grounds, that is, this court may in the first instance determine that Cochran's claims are frivolous under Sec. 1915(d). The Supreme Court does not allow Sec. 1915(d) to be used in that way, however.
 
 
 49
 Whether a complaint is "frivolous" for purposes of Sec. 1915(d) "must be addressed in the first instance by the District Court." Boag, 454 U.S. at 365 n. *, 102 S.Ct. at 701 n. *. The reason for the Boag rule is simple: there cannot be true appellate review unless the district court has first exercised its discretion under Sec. 1915(d). Here, the district judge did not enter a discretionary dismissal under Sec. 1915(d), and this court cannot make the Sec. 1915(d) determination in the first instance.[3]IV.
 
 
 50
 I am bothered by the lack of precision this opinion could encourage in the district courts. Nowhere does the majority suggest that when a district court invokes Sec. 1915(d) it should cite the statute and provide a brief explanation as to why the complaint is frivolous or malicious. Here, it took an en banc majority untold hours and several pages of writing to find that the district judge dismissed under Sec. 1915(d). Such inefficient exercises can be avoided only if district courts cite the statute and explain in a few sentences why the complaint fails under the statutory standard.
 
 
 51
 Rather than wrench this case into Sec. 1915(d), I would conclude that the district judge meant what he said and dismissed on the merits. That, of course, would require that the judgment be vacated and the case remanded to give Cochran the opportunity to be heard. Again, I respectfully dissent.
 
 
 52
 Chief Judge ERVIN, Judge MURNAGHAN and Judge MOTZ have asked me to say that they join in this dissent.
 
 
 
 [1]
 Appellee also refers to an action Cochran filed in 1991 in the Western District requesting placement in protective custody. This action is not included in the record before this court but appellee asserts that it was dismissed as moot in November, 1991. This court affirmed that dismissal. See Cochran v. Smith, 955 F.2d 40 (Table), No. 91-7729 (4th Cir.1992) (affirming denial of relief under Sec. 1983). This court also affirmed district court dismissals of a number of other actions Cochran filed. See Cochran v. Morris, 46 F.3d 1123 (Table), No. 94-6971 (4th Cir.1995) (affirming dismissal of Sec. 1983 action for failure to pay filing fee); Cochran v. Williams, 8 F.3d 817 (Table), No. 93-6625 (4th Cir.1993) (same); Cochran v. Bair, 905 F.2d 1528 (Table), No. 89-6327 (4th Cir.1990) (affirming denial of relief under Sec. 1983)
 
 
 [2]
 Notwithstanding the dissent's view, we do not read Boag v. MacDougall, 454 U.S. 364, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982), to require otherwise. In Boag, a per curiam opinion, the Court reversed and remanded the dismissal of an in forma pauperis complaint. The Court found that the basis for the dismissal--mootness--was error as a matter of law. The Court's suggestion in a footnote that the district court should explain the grounds for a Sec. 1915 dismissal was in the context of a case, unlike the case at hand, where there was no indication that Sec. 1915(d) was the basis for the dismissal in either the trial or appellate court and where "both courts relied solely upon erroneous legal grounds for dismissing the complaint." Id. at 365 n. *, 102 S.Ct. at 701 n. *
 
 
 [3]
 We do not reach the applicability of RFRA to this claim, or the question of RFRA's constitutionality. Cochran did not allege a violation of RFRA in his complaint. He raised his RFRA claim only in a motion for relief from judgment. The district court denied this Rule 60(b) motion and Cochran did not appeal that ruling. Therefore, RFRA's constitutionality is not properly before this court. 11 Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure Sec. 2871 at 422-24 (1995)
 
 
 [1]
 There is some case law discussing the narrow circumstances in which a court may raise sua sponte the issue of res judicata. See, e.g., Holloway Constr. Co. v. U.S. Dept. of Labor, 891 F.2d 1211, 1212 (6th Cir.1989); Carbonell v. Louisiana Dept. of Health & Human Resources, 772 F.2d 185, 189 (5th Cir.1985). These cases stand for the proposition that, under limited circumstances, a court may consider on its own motion the issue of res judicata, a defense which ordinarily is waived unless affirmatively pleaded. They do not address the issue whether a court may sua sponte dismiss (on res judicata grounds or for failure to state a claim) a complaint without notice and an opportunity to respond. See Nevada Employees Assoc., Inc. v. Keating, 903 F.2d 1223, 1225 (9th Cir.), cert. denied, 498 U.S. 999, 111 S.Ct. 558, 112 L.Ed.2d 565 (1990) (trial court may sua sponte raise res judicata so long as parties are permitted to submit briefs on the issue). Thus, assuming that the district judge was free to raise sua sponte the res judicata issue, the question still remains whether dismissal was proper without notice and a chance to be heard
 
 
 [2]
 A few circuits will affirm such (without notice) dismissals when it is "patently obvious" that the plaintiff could not possibly succeed. See Murphy, 960 F.2d at 748; McKinney v. Oklahoma, 925 F.2d 363, 365 (10th Cir.1991); Baker v. Director, U.S. Parole Comm'n, 916 F.2d 725, 726-27 (D.C.Cir.1990); Omar v. Sea-Land Serv., Inc., 813 F.2d 986, 991 (9th Cir.1987). However, a "patently-impossible-to-succeed" exception to the general prohibition is unwarranted. Any judicial economy that this exception might afford in the short run would be outweighed by the costs generated by encouraging premature dismissals. Appellate courts would routinely be required to measure scant records against the exception's arguably subjective standard. More remands would be likely, causing further work for the district courts. See Lewis v. New York, 547 F.2d 4, 6 (2d Cir.1976). On the other hand, the burden imposed by an absolute prohibition is minimal: a district court need only give notice with an opportunity for a response before entering a dismissal on the merits
 
 
 [3]
 The majority cannot avoid the Boag rule by citing Brown v. Briscoe, 998 F.2d 201 (4th Cir.1993), and White v. Gregory, 1 F.3d 267 (4th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 931, 127 L.Ed.2d 223 (1994). See ante at 1315-16 and n. 2. Although we began Brown v. Briscoe by saying that the district court dismissed for failure to state a claim, we ended the opinion by holding "that the district court did not abuse its discretion by dismissing this cause of action as frivolous." 998 F.2d at 204. Our holding thus indicates that the district court in Brown did exercise Sec. 1915(d) discretion in the first instance. Nevertheless, assuming arguendo that Brown permits this court to affirm on Sec. 1915(d) grounds when the district court never exercised its discretion under Sec. 1915(d), Brown failed to follow Boag, a case Brown does not cite. White v. Gregory does not allow a dismissal on the merits to be affirmed on alternative Sec. 1915(d) grounds. There, the district court did dismiss the complaint under Sec. 1915(d) as factually frivolous; we affirmed the dismissal under Sec. 1915(d), citing legal frivolity. 1 F.3d at 269. Thus, the district court in White exercised its discretion in the first instance under Sec. 1915(d). Here, the district court did not