**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 08-1948**

———————

MYRA JOHNSON, on behalf of herself and all others similarly
situated,

        Plaintiff - Appellant,

    v.

SPRINT SOLUTIONS, INCORPORATED,

        Defendant – Appellee,

    and

SPRINT NEXTEL CORPORATION,

        Defendant.

———————

Appeal from the United States District Court for the Western
District of North Carolina, at Charlotte.  Graham C. Mullen,
Senior District Judge.  (3:08-cv-00054-GCM)

———————

Argued:  September 24, 2009      Decided:  December 18, 2009

———————

Before KING and DUNCAN, Circuit Judges, and Irene M. KEELEY,
United States District Judge for the Northern District of West
Virginia, sitting by designation.

———————

Affirmed by unpublished per curiam opinion.

———————

**ARGUED:** Gary Walker Jackson, JACKSON & MCGEE, LLP, Charlotte,
North Carolina, for Appellant.  David Edward Mills, DOW LOHNES,
PLLC, Washington, D.C., for Appellee.  **ON BRIEF:** Samuel McGee,
JACKSON & MCGEE, LLP, Charlotte, North Carolina, for Appellant.

Michael Kovaka, DOW LOHNES, PLLC, Atlanta, Georgia; Daniel D. Prichard, DOW LOHNES, PLLC, Washington, D.C., for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

On March 23, 2005, Myra Johnson ("Johnson") entered into a multiple document cell phone contract ("the Contract") with Sprint Solutions, Inc. ("Sprint") that permitted Sprint to charge Johnson roaming fees on a per-call basis. Sprint subsequently billed Johnson roaming fees for calls she made or received while in places such as Charlotte and Rockingham, North Carolina. Although Johnson believed these areas were well within Sprint's service network as described in the Contract, and that Sprint had wrongfully billed her roaming fees for those calls, she initially paid the fees without protest. Eventually, however, she determined that these billings breached the Contract and sued Sprint "on her behalf and on behalf of others similarly situated," for breach of contract, negligent misrepresentation, unjust enrichment, violation of North Carolina's Unfair and Deceptive Trade Practices Act, and also for injunctive relief.

Johnson's complaint alleged that Sprint lacked the technological ability to verify the geographic location of customers using its services, and accordingly theorized that all bills containing roaming fees had been wrongfully charged and assessed. Sprint moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. The district court granted Sprint's motion, reasoning that North

3

Carolina's "voluntary payment doctrine"[1] barred Johnson's claim. See Johnson v. Sprint Solutions, Inc., 2008 WL 2949253 (W.D.N.C. 2008). Johnson appeals from that order, contending that the district court misinterpreted and misapplied the voluntary payment doctrine. As discussed below, we affirm the district court's judgment; however, we do so on alternate grounds. See Cochran v. Morris, 73 F.3d 1310, 1315 (4th Cir. 1996).

## I.

We review *de novo* the district court's decision to grant a motion to dismiss. Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). We accept the factual allegations in Johnson's complaint as true, but recognize that, to survive a motion to dismiss, the complaint must set forth a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

## II.

Johnson's claim rests entirely on the proposition that various maps provided and displayed by Sprint formed part of the

---

[1] North Carolina's voluntary payment doctrine stands for the simple principle that "the voluntary payment of money by a person who has full knowledge of all the facts can not [sic] be recovered." Guerry v. American Trust Co., 68 S.E.2d 272, 274 (N.C. 1951).

Contract, and that these maps outlined where Sprint customers would, and would not, be subject to roaming fees. Relying on this, Johnson argues that Sprint breached the Contract by charging roaming fees for calls she made or received in places depicted on the maps as non-roaming areas. She contends that Sprint misled her into believing it had the ability to verify her geographic location whenever she used Sprint's services.

In her complaint, Johnson alleged that the Contract was comprised of a PCS Advantage Agreement, the PCS Service Plans Guide and "[a]ny other printed materials made available to the FF Subscriber, which includes a Sprint PCS Coverage Guide, which includes maps depicting the Home Area." She attached these documents as exhibits to her complaint. J.A. 27-136.

Her complaint also asserted that Sprint's Terms and Conditions ("Ts & Cs") did not comprise a part of the Contract because Sprint did not deliver them at the time Johnson signed the PCS Advantage Agreement.[2] Although Johnson did not attach Sprint's Ts & Cs to her complaint, Sprint filed them as exhibits

---

[2] Just above Johnson's signature on the PCS Advantage Agreement, it states in pertinent part:

> By signing below you … (ii) agree that you have read and agreed to all terms of this Agreement, including the requirements of your PCS Service Plan and the most recent Ts&Cs . . ."

J.A. 28.

to its motion to dismiss. J.A. 140-55. In considering Sprint's motion to dismiss, the district court concluded that the Ts & Cs comprised a part of Johnson's contract with Sprint, a conclusion Johnson does not challenge on appeal. Before us, she disputes only whether the district court properly interpreted the Ts & Cs when it dismissed the complaint.

Based on our review, we conclude that the Contract consists of the PCS Advantage Agreement, the PCS Service Plans Guide, the PCS Coverage Guide and the maps depicted in it, Sprint's Ts & Cs, as well as any printed materials, including maps, provided or displayed to Johnson by Sprint at its store. We further conclude that, under the plain terms of the Contract, Sprint's maps were no more than approximate representations of service coverage areas and provided no geographic promises depicting where Johnson would and would not be subject to roaming fees. The Sprint PCS Coverage Guide ("Coverage Guide"), for example, states:

> **Coverage Maps**: *Maps show approximate service areas for outdoor coverage*. They're based on computer-generated radio-frequency projections and information from third parties but don't guarantee service availability. *Actual coverage and the quality and availability of coverage can vary according to network problems, signal strength, your equipment, terrain, structures, weather and other limitations or conditions. Coverage isn't available everywhere and may not be available in all areas shown on these maps*.

(emphasis added). Similarly, the text accompanying a map appearing in the Coverage Guide provides:

> Map sets forth approximate service areas for outdoor coverage and is not a guarantee of service availability.

(emphasis added). This language alone convincingly establishes that Sprint's maps did not constitute an unequivocal and definite promise signaling where Johnson would and would not be subject to roaming fees.

Our conclusion is further bolstered by the following language in the Ts & Cs:

> **You are roaming anytime your phone indicates that you are roaming**. . . . Depending on your phone settings, you may automatically roam if there is a gap or interruption in coverage within the Sprint Nationwide PCS Network coverage area and roaming coverage areas.

(emphasis added). Thus, Johnson's claims all rest on a theory wholly refuted by the plain terms of the Contract and fail as a matter of law.

After considering the briefs and oral arguments of counsel, and the record before us, we affirm the district court's judgment on the ground that Johnson's contract with Sprint entitles her to no relief. We therefore need not consider whether North Carolina's voluntary payment doctrine barred her claim.

<u>AFFIRMED</u>

7