James W. MENSH, Bennie P. Mensh, Plaintiffs–Appellees,

v.

R.A. DYER, M.G. Tsoleas, Jr., C.M. Chidester, Jr., Defendants–Appellants,

and

Ted Banholzer, Gerald C. Fayed, Defendants.

No. 90–2913.

United States Court of Appeals, Fourth Circuit.

Argued May 6, 1991.

Decided Nov. 21, 1991.

Amended by Order Jan. 13, 1992.

Gregory E. Lucyk, Sr. Asst. Atty. Gen., Richmond, Va., argued (Mary Sue Terry, Atty. Gen., Gail Starling Marshall, Deputy Atty. Gen., on brief), for defendants-appellants.

Clifford Lee Harrison, Stone, Hamrick, Harrison & Turk, P.C., Radford, Va., argued (Daniel D. Hamrick, on brief), for plaintiffs-appellees.

Before HALL, Circuit Judge, STAKER, District Judge for the Southern District of West Virginia, sitting by designation, and KAUFMAN, Senior District Judge for the District of Maryland, sitting by designation.

## OPINION

STAKER, District Judge:

In the early morning hours of April 4, 1989, a joint state and federal arrest team attempted to execute a warrant against James William Mensh at his home in Christiansburg, Virginia. It was a case of mistaken identity; the warrant was meant for his son, who has the same name. As a result of that incident, James and Bennie Mensh brought a federal civil rights action, and related state claims, against three state police officers and one FBI agent. The district court denied the state defendants' motion for summary judgment, and the State of Virginia now appeals.

The issue before us is whether the district court erred in denying the Virginia State Police officers' motion for summary judgment seeking qualified immunity.

*Facts*

A federal grand jury handed down a 17–count indictment charging James William Mensh, among others, with drug trafficking crimes. The indictment also required the forfeiture of a vehicle owned by James

William Mensh. A warrant was issued on the basis of the indictment and a joint state and federal arrest team was directed to execute it. The arrest team included Federal Bureau of Investigation Special Agent Ted Banholzer and Virginia State Police officers Randy A. Dyer, M. George Tsoleas, Jr., and Calvin M. Chidester. The team received an arrest packet which contained a brief description of the suspect and his address, but included no birth date or social security number. It also contained photo copies of two photographs which had not reproduced clearly. On the morning of the arrest Officer Dyer learned from the Department of Motor Vehicles that a valid driver's license had been issued in the name of James William Mensh which showed him to be 56 years old.

About 6:00 a.m. on April 4, 1989, the team assembled outside the home of James and Bennie Mensh. The state officers were armed and wore casual clothes and blue all-weather jackets boldly marked in yellow with state police insignia. Agent Banholzer was also armed and wore a sport coat with his badge clipped to the front pocket. The officers strategically stationed themselves around the doorways, then hammered on the front door with the metal door knocker.

Inside, the Menshs were asleep. Bennie Mensh was awakened by a knock and in turn woke her husband, saying that someone was at the front door. He called out the window but did not hear a response. He went downstairs to investigate and saw through the window the silhouette of a man with a shotgun. He rushed back upstairs to telephone 911, to contact the local police. The officers outside heard the sound of running feet and called out "Police! We have a warrant!" or something to that effect. Seconds later, they broke down the front door.

As the arrest team was securing the ground floor, Lt. James A. Epperley of the Christiansburg Police Department arrived in response to the Menshs' 911 call. He found the arrest team officers positioned with guns aimed upstairs at the bedroom door. They were yelling, swearing and ordering Mr. Mensh to come downstairs with his hands up. Lt. Epperley told them he knew Mr. Mensh and would talk to him. He identified himself to Mr. Mensh, who immediately opened the door and started down the steps with his hands at his sides. One of the agents repeatedly told Mr. Mensh to raise his hands, which he did only when he got to the bottom of the stairs. They grabbed him, pushed him against the wall and handcuffed him.

The agents informed him they had a federal warrant for his arrest. At that point, Mr. Mensh said they did not want him, they wanted his son. Someone showed the photograph from the arrest packet to Mrs. Mensh, who had followed her husband downstairs, and she identified it as a picture of her son. Mr. Mensh asked the officers to remove the handcuffs but the FBI agent refused. He said that he was securing the scene and would not remove the handcuffs until Mr. Mensh had become more composed, he being deemed by the F.B.I. agent to be in an extremely agitated state. The officers questioned the Menshs about their son and his whereabouts and then released Mr. Mensh. They asked Lt. Epperley to stay at the scene to prevent the Menshs from warning their son, but he refused. The arrest team then left the house and drove to Roanoke where they successfully arrested James William Mensh, Jr.

The incident engendered some publicity. James and Bennie Mensh brought a civil rights action against FBI Special Agent Banholzer and Virginia State Police Special Agents Dyer, Tsoleas and Chidester. The complaint alleged four state counts—slander, assault and battery, false imprisonment, and intentional infliction of emotional distress—in addition to a violation of 42 U.S.C. § 1983. The district court dismissed the claim against Federal Agent Banholzer, but denied the state defendants' motion for summary judgment, holding that they had failed to establish their claim of qualified immunity. The Virginia defendants appealed.

*Analysis*

I

42 U.S.C. § 1983 allows recovery for plaintiffs who are denied their federal civil rights by someone acting "under color of state law." If there is no deprivation of federal rights, the inquiry ends. If a violation has occurred, a suit may still be barred by the state official's qualified immunity. *See Torchinsky v. Siwinski,* 942 F.2d 257, 261 (4th Cir.1991).

 Qualified immunity is an "entitlement not to stand trial or face the other burdens of litigation" and is essentially irreclaimable once a case is allowed to go to trial. Accordingly, the denial of a motion for summary judgment based on a claim of qualified immunity is a "final decision" for purposes of appellate review. *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985).

The court of appeals must review the summary judgment motion under the same standard used by the trial court. If there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law. Proper review, under Fed. R.Civ.P. 56, encompasses the entire summary judgment record, viewed in the light most favorable to the plaintiffs. *Turner v. Dammon,* 848 F.2d 440, 443–444 (4th Cir. 1988).

 The state police officers are entitled to summary judgment on the ground of qualified immunity if they can establish that reasonable officers could have believed that their actions were lawful in light of both clearly established law and the information the officers possessed at the time. *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–3040, 97 L.Ed.2d 523 (1987). We inquire into the "objective legal reasonableness" of the actions; the officers' subjective beliefs are irrelevant. *Id.* at 639, 107 S.Ct. at 3038 (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)) and 483 U.S. at 641, 107 S.Ct. at 3039–3040.

II

After review of the summary judgment record, we conclude that there are no material facts in dispute. The facts, viewed in the light most favorable to the plaintiffs, support the defendants' claim of qualified immunity. As grounds for their § 1983 action, the plaintiffs allege that the officers: (1) lacked probable cause to arrest Mr. Mensh, (2) failed to knock and announce their presence, and (3) used excessive force in making the arrest.

A. Lack of Probable Cause

 In *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), police arrested and detained a man for three days on a warrant intended for his brother. The Supreme Court held that he was not deprived of his constitutional rights; the warrant conformed to the requirements of the fourth amendment and was supported by probable cause. An arrest based on probable cause does not violate the fourth amendment, even if the wrong person is arrested. *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 1871–1872, 104 L.Ed.2d 443 (1989) (citing *Hill v. California,* 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971)).

This Court decided a case factually similar to the present one in *Thompson v. Prince William County,* 753 F.2d 363 (4th Cir.1985). We held that "[n]ot every mix-up in the issuance of the arrest warrant, even though it leads to the arrest of the wrong person, with attendant inconvenience and humiliation, automatically constitutes a constitutional violation for which a remedy may be sought under 42 U.S.C. § 1983." *Id.* at 364.

In *Thompson,* an undercover investigation supplied the information necessary for a warrant. Officers who had not participated in the investigation executed the warrant and arrested a woman fitting the warrant's description. At her initial court appearance, the undercover police officer saw her for the first time and realized she was the wrong person. Charges were dropped. We held that it would have been unreasonable to abandon execution of the warrant,

despite the existence of "slight discrepancies," because of the strong similarities between the arrestee and the person sought. The warrant itself was valid and supported by probable case. *Id.* at 365.

 In the present case the officers attempted to execute a facially valid arrest warrant based on a federal indictment. Their actions are supported by probable cause and did not violate the Menshs' federally-protected rights. The Menshs raise the following additional arguments in support of their claim, not against the warrant but against its manner of execution.

**B. Failure to Knock and Announce**

 The state officers' duty to announce their authority and purpose before entry is governed by the fourth amendment's "reasonableness" standard. "Knock and announce" requirements vary with the circumstances of each case. *Simons v. Montgomery County Police Officers*, 762 F.2d 30, 32 n. 1 (4th Cir.1985), *cert. denied*, 474 U.S. 1054, 106 S.Ct. 789, 88 L.Ed.2d 767 (1986). Even simultaneous entry is permissible if there is a likelihood of escape or resistance. *United States v. Jackson*, 585 F.2d 653, 662 (4th Cir.1978). The facts do not support the Mensh's claim of a constitutional violation. Mr. Mensh's affidavit states that his wife heard a knock near the front door which awakened her. He ran upstairs after seeing the silhouette of a shotgun when investigating that knock. The arrest team heard the sound of running feet and was justified in making an expeditious entry.

**C. Use of Excessive Force**

 Claims that law enforcement officers used excessive force in effecting an arrest must be analyzed under the fourth amendment's "objective reasonableness" standard, taking into account the facts and circumstances of each case. *Graham v. Connor*, 490 U.S. at 394–396, 109 S.Ct. at 1870–1872. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rap-

idly evolving, about the amount of force necessary in a particular situation." *Id.* at 396–397, 109 S.Ct. at 1871–1872. Officers are entitled to use the amount of force necessary to take an individual into custody. *Id. See Martin v. Gentile*, 849 F.2d 863 (4th Cir.1988). The officers attempting to arrest Mr. Mensh on the basis of a valid warrant had been trained that violence often accompanies drug arrests. His behavior—shouting, running, refusing to come out of the bedroom, refusing to raise his hands, failing generally to comply with police orders—appeared uncooperative to the officers on the scene. The officers did not slap or punch Mr. Mensh. He was physically restrained only when he was given a pat-down search and handcuffed.

 Finally, he was released after members of the arrest team listened to his entreaties and conceded their mistake. In executing a warrant, officers are not required to investigate independently every claim of innocence. *Baker v. McCollan*, 443 U.S. at 145–146, 99 S.Ct. at 2695–2696. In the ensuing confusion a brief detention to question Mr. Mensh's assertions, reevaluate the situation and secure the scene was prudent and "objectively reasonable." It is undisputed that he suffered no physical injury as a result of the incident. In considering the totality of the circumstances it appears that the use of force was not objectively unreasonable and was therefore not constitutionally excessive.

*Conclusion*

 The state defendants are entitled to summary judgment on the basis of qualified immunity. The pendent state claims are dismissed, there being no independent diversity grounds. *See Thompson v. Prince William County*, 753 F.2d at 365.

REVERSED.

KAUFMAN, Senior District Judge, dissenting:

I would affirm the refusal of the district judge to grant summary judgment for the reasons stated by him in his Memorandum Opinion filed July 12, 1990. Whether ex-

cessive force and/or unreasonable continuance of detention occurred—and if so, which of the defendants, if any, violated plaintiffs' rights—present factual issues which, in my view, at least entitle plaintiffs to conduct discovery. Excessive force and/or unreasonable continuance of detention can violate constitutional rights of persons subjected to the same. *See Johnson v. Morel,* 876 F.2d 477 (5th Cir.1989); *Wilkins v. May,* 872 F.2d 190 (7th Cir.1989). Accordingly, I respectfully dissent.