**Sherman S. ROSS, Plaintiff,**

v.

**James KEELINGS, Renee Robinson, James A. Smith, Defendants.**

No. 2:96CV1148.

United States District Court, E.D. Virginia, Norfolk Division.

April 27, 1998.

**812**

Martha Murphey Parrish, Office of Atty. Gen., Richmond, VA, for Defendants.

## OPINION AND FINAL ORDER

CLARKE, District Judge.

Plaintiff, Sherman S. Ross, a Virginia inmate, brings this *pro se* action pursuant to 42 U.S.C. § 1983 to redress alleged violations of his constitutional rights. He makes several claims, all related to his coerced attendance at a prison therapeutic program that teaches religion in an effort to rehabilitate inmates with a history of drug or alcohol abuse. Defendants, all of whom are Virginia corrections officials, filed a motion for summary judgment on Ross' claims. For the reasons that follow, summary judgment is granted.

### I. FACTS

#### A.

The following facts are recited in the light most favorable to Ross. *See Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985) (stating that on summary judgment, "[t]he facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to plaintiff").

In 1994, Indian Creek Correctional Center ("Indian Creek") developed the Therapeutic Community, an involuntary treatment program designed to assist in the rehabilitation of inmates at the institution. *See* Robinson Aff. ¶ 3.[1] The Therapeutic Community is a substance abuse program modeled on the concept of lifestyle accountability, with the goal of living a crime and drug free existence. *Id.*

Indian Creek staff screens inmates to identify primary treatment needs before assigning inmates to the program. *Id.* ¶ 4. Inmates with a prior history of substance abuse and who fit other detailed criteria[2] are assigned to the program. *Id.* The Therapeutic Community is a mandatory, involuntary

rehabilitation program. If after being assigned to the program, an inmate refuses to participate, he suffers the loss of his Good Conduct Allowance. *See* Robinson Aff. ¶ 6. Essentially, by being a model inmate, Ross has the opportunity to earn good conduct allowances and thereby reduce the time he must serve in order to satisfy his sentence. *Id.* By not participating in the Therapeutic Community program, he is not eligible to earn good conduct allowances and must stay in prison longer. *Id.; see* Va.Code Ann. 53.1–32.1 (Michie 1994).

The religious aspects of the Therapeutic Community program are described as follows:

7. The goal of the Therapeutic Community is to educate inmates using a holistic approach to deal with substance abuse by teaching life, coping and spiritual skills. We incorporate spiritual well-being into the program to help an inmate develop his own spirituality. A traditional treatment program incorporates spirituality because many therapeutic programs have found that substance abusers who developed themselves spiritually have a better chance of overcoming their addiction to alcohol or drugs. The Therapeutic Community utilized publications that refer to God (e.g. Serenity Prayer). We have an "inspirational crew," which consists of a group of inmates who conduct educational lectures on various religious philosophies that are representative of Indian Creek's inmate population. No specific religion is endorsed, however.

\* \* \* \* \* \*

9. Although spirituality is incorporated into the Therapeutic Community, we do not promote one religion over another, or require an inmate to identify with a particular religion. Nor are inmates forced to pray. Inmates who do not identify with

---

1. The Affidavit of Renee Robinson was attached as Exhibit A to Defendants' motion for summary judgment. Robinson is the Director of the Therapeutic Community treatment program at Indian Creek. *See* Robinson Aff. ¶ 1. The affidavit was unrebutted by Ross.

2. In addition to a documented history of substance abuse, to be assigned to the program a

prisoner must have no history of sexual assault crimes, no extreme behavioral problems, at least 18 months left to serve on his sentence, no more than seven years and no less than one year left until his mandatory parole release date, and been sentenced by a court in the Tidewater area. *See* Robinson Aff. ¶ 4.

the word God, may use any affirmation (e.g. Allah, Jehovah).

\* \* \* \* \* \*

14.... Religion is incorporated into the program so that an inmate can seek out and find his own spirituality. The program has never attempted to force a particular religious belief on any inmate.

Robinson Aff. ¶¶ 7, 9, 14.

Ross was assigned to the Therapeutic Community program from September 26, 1996 to October 7, 1997.[3] His criminal record documented a past history of abusing drugs and alcohol. *Id.* at 5. He also met the other criteria for assignment to the program. *Id.*

#### B.

In his *pro se* Complaint, Ross pleads four discernable claims. First, he claims that the Virginia statute conditioning good conduct allowances on participation in prison programs, *see* Va.Code. Ann. 53.1–32.1, impermissibly increases his punishment and is a violation of the Ex Post Facto Clause of the United States Constitution. Second, he claims that Defendants violated his substantive and procedural due process rights by assigning him to the program and by failing to provide notice and a hearing before commitment to the program. Third, he claims that he was retaliated against by prison officials. Fourth, Ross claims that involuntary commitment to the Therapeutic Community program violated his Establishment Clause rights because the program teaches prayer and religion that offends him.

Ross seeks declaratory, injunctive, and monetary relief. First, he seeks a declaration that his constitutional rights were violated. Next, he seeks an injunction removing him from the Therapeutic Community program and expunging from his prison record any reference to mental illness or substance abuse. Finally, he seeks $200,000 in compensatory damages and $500,000 in punitive damages from each defendant.

Ross' Complaint was conditionally filed on November 11, 1996. After he qualified to proceed *in forma pauperis* and the Complaint was deemed filed, Defendants were notified of the action against them. On October 30, 1997, Defendants filed an Answer and a Motion to Dismiss/Motion for Summary Judgment that attached two affidavits providing factual information in support of summary judgment. In their motion, Defendants first argue that since Ross has been removed from the Therapeutic Community program, his claims are moot. With regard to Ross' due process claims, they argue that there has been no violation because Ross has not been subjected to "atypical and significant hardship" under *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). With regard to Ross' retaliation claim, Defendants argue that Ross has failed to produce evidence of causation. Defendants argue also that there has been no Establishment Clause violation because the Therapeutic Community program is reasonably related to a legitimate penological interest and passes the *O'Lone v. Estate of Shabazz* test. 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). Finally, Defendants argue that they are entitled to qualified immunity on Ross' claims.

In accordance with *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir.1975), and Rule 7(J) of the Local Rules of Practice for the United States District Court for the Eastern District of Virginia, Ross was notified by Defendants of his opportunity to respond to Defendants' motion with any material that he wished to offer in rebuttal. Ross was instructed that failure to submit any materials could result in an adverse judgment based on Defendants' motion and accompanying affidavits. Ross has failed to respond to Defendants' motion for summary judgment or offer factual information to rebut Defendants' affidavits. This matter is therefore ready for judicial determination on the record before the Court.

### II. SUMMARY JUDGMENT STANDARD

The standard on summary judgment is familiar. Pursuant to Fed.R.Civ.P. 56(c), a

---

**3.** Ross was initially placed in the program on September 26, 1996. *See* Robinson Aff. ¶ 5. He filed grievances about the program with Indian Creek on April 3 and 7, 1997. *See id.* ¶¶ 10, 12.

Ross was removed from the program on October 7, 1997. *See* Corner Aff. ¶ 3 (attached as Exhibit B to Defendants' motion for summary judgment).

district court must enter judgment against a party who, "after adequate time for discovery ... fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law," entry of summary judgment is mandated. Fed.R.Civ.P. 56(c); *see Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 190 (4th Cir.1997). To avoid summary judgment on defendant's motion, a plaintiff must produce evidence creating a genuine issue of material fact. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). "In determining whether a genuine issue of material fact is in dispute, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Amos v. Maryland Dep't of Pub. Safety & Correctional Servs.*, 126 F.3d 589, 608 (4th Cir.1997) (citing *Anderson*, 477 U.S. at 255), *petition for cert. filed*, 66 U.S.L.W. 3474 (Dec. 19, 1997).

## III. MOOTNESS

■ As an initial matter, the Defendants argue that Ross' claims are moot since he was ultimately transferred out of the Therapeutic Community program. Contrary to their argument, however, Ross' claims are far from moot. He is certainly entitled to pursue his claims and request damages for any constitutional violations found to have occurred before his transfer out of the program. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir.1991) (holding that transfer of inmate moots inmate's injunctive and declaratory relief claims but not his damages claim).

## IV. EX POST FACTO CLAIM

Ross first claims that the Virginia statute conditioning good conduct allowances on participation in prison rehabilitation programs impermissibly increases his punishment and violates the Ex Post Facto Clause of the United States Constitution. The Virginia statute at issue states: "Notwithstanding any other provision of law, prisoners refusing to accept a program assignment shall not be eligible for good conduct allowances or earned sentence credits ...." Va.Code Ann. § 53.1–32.1 (Michie 1994). This statute was passed in 1993. It is unclear from the record before the Court when Ross first became a Virginia inmate subject to this statute, but for the sake of argument, the Court will assume that he was incarcerated in Virginia before the statute took effect.

■ To the extent that Ross is seeking restoration of good time credits and an earlier release date, this claim must be construed as a petition for writ of habeas corpus. *See Preiser v. Rodriguez*, 411 U.S. 475, 487–90, 500, 93 S.Ct. 1827, 1835–36, 1841–42, 36 L.Ed.2d 439 (1973) (holding that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."). So construed, this claim must be dismissed without prejudice because Ross has failed to allege that he has exhausted his available state remedies. *See id.* at 490–91.

■ Insofar as Ross seeks damages for Defendants' alleged unconstitutional application of a law having an ex post facto effect, his claim must be dismissed because he fails to prove that his sentence has been invalidated due to the application of the law in an ex post facto manner. In *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Supreme Court held that

in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus ....

512 U.S. at 486–87. A claim that Defendants are unlawfully applying a law that has an ex post facto effect is a claim that, if successful, would ultimately render the length of Ross' sentence invalid. *See Preiser,* 411 U.S. at 487 (finding that a claim of unconstitutional deprivation of good time credits, if successful, would have the effect of shortening a sentence and is cognizable under habeas). Thus, under the instruction of *Heck,* in order for the Court to consider this claim under § 1983 Ross' sentence must have been invalidated. Since it has not, this claim is dismissed.

## V. DUE PROCESS CLAIM

Ross next claims that his substantive and procedural due process rights were violated by his assignment to the Therapeutic Community program.[4] He claims that his substantive due process rights were violated by his arbitrary assignment to the program. He claims that his procedural due process rights were violated by not being afforded notice and a hearing before a neutral adjudicator before being assigned to the program. Both of these claims fail because Ross did not have a liberty interest in avoiding assignment to the therapeutic program at issue.

■ To succeed on a substantive or procedural due process claim, an inmate must first demonstrate that he was "deprived of 'life, liberty, or property' by government action." *Beverati v. Smith,* 120 F.3d 500, 502 (4th Cir.1997). Ross was not deprived of life or property. Thus, his claim must be that he was deprived of liberty by assignment to the program he now attacks.

■ The next question is whether Ross actually possessed a liberty interest in avoiding assignment to the Therapeutic Community program. *See id.* at 502–03. An inmate's liberty interest is only in avoiding a deprivation that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995). Thus, the

Court must compare the conditions to which Ross was exposed in the Therapeutic Community program to those he could expect to experience as ordinary incidents of prison life. *See Beverati,* 120 F.3d at 503.

■ Mandatory participation in the Therapeutic Community program was not an atypical and significant hardship in relation to ordinary prison life. Indeed, rehabilitation programs are commonplace at all correctional facilities. Otherwise, a facility would never achieve its goal of returning inmates to society as law abiding citizens. Moreover, a large part of prison life for inmates is regimented—or mandatory. Otherwise, the residents at correctional facilities would not be called "inmates" or "prisoners." Accordingly, forcing Ross to attend the Therapeutic Community program, in an effort to rehabilitate him and prepare him for his return to society, was not an atypical and significant hardship compared to ordinary prison life and therefore did not deny him due process of law. *See Sandin* 515 U.S. at 486 (holding that disciplining inmate in segregated confinement does not implicate due process rights); *Beverati,* 120 F.3d at 502 (same); *Cochran v. Morris,* 73 F.3d 1310, 1318 (4th Cir.1996) (en banc) (stating that where state regulations "contemplate routine inmate transfers[,] [t]hey do not … impose 'atypical and significant hardship on the inmate'" and do not violate due process).

## VI. RETALIATION CLAIM

Ross' third claim is that he was retaliated against by Defendants. His sole allegation on this issue is that he was denied access to a non-smoking dorm.

### A.

A state official may not retaliate against an individual for the exercise of a constitutional right. *ACLU v. Wicomico County,* 999 F.2d 780, 785 (4th Cir.1993) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). The Fourth Circuit has noted that in the prison context, retaliation claims should be treated with skepticism. *Cochran*

4. In his Complaint, Ross also refers to the Equal Protection Clause and vaguely alleges that his equal protection rights were violated by his assignment to the program. These allegations, however, are indistinguishable from the substantive due process allegations and the Court deems any equal protection allegations to be subsumed within this due process claim.

*v. Morris,* 73 F.3d 1310, 1317 (4th Cir.1996); *Adams v. Rice,* 40 F.3d 72, 74 (4th Cir.1994), *cert. denied,* 514 U.S. 1022, 115 S.Ct. 1371, 131 L.Ed.2d 227 (1995).

■ In order to prove a claim of retaliation, an inmate must show that "each retaliatory act violate[d] some constitutional right of an inmate or constitute[d] punishment for the exercise of a constitutional right." *Cochran,* 73 F.3d at 1318 (citing *Adams,* 40 F.3d at 75). Plaintiff must also show that he "suffered some adversity in response to [his] exercise of protected rights." *Wicomico County,* 999 F.2d at 785; *accord Huang v. Board of Governors,* 902 F.2d 1134, 1140 (4th Cir.1990). The adverse impact must be more than a *de minimis* inconvenience. *Wicomico County,* 999 F.2d at 786 n. 6.

■ In addition, plaintiff must demonstrate causation—that the protected conduct was a "substantial" or "motivating factor" in the defendants' decision. *Mt. Healthy City School Dist.,* 429 U.S. at 287. If plaintiff successfully shows causation, the burden then shifts to defendants who must demonstrate that they would have made the same decision in the absence of plaintiff's protected conduct. *Id.; see also Woods v. Edwards,* 51 F.3d 577, 580–81 (5th Cir.1995) (summary judgment affirmed where prison officials showed non-retaliatory justification for actions and inmate offered no evidence other than his personal belief that the actions were based on his exercise of rights).

### B.

■ Ross' retaliation claim fails because he has failed to make any allegations or produce any evidence on the issue of causation. He has not alleged that the retaliation came as a result of his disagreement with his assignment to the Therapeutic Community program. Nor has he alleged or produced any evidence that in failing to assign him to a non-smoking dorm Defendants were motivated by his resistance to the program.

Moreover, Ross has failed to demonstrate that his living conditions in his smoking dorm

fell below "[c]ontemporary standards of decency." *Helling v. McKinney,* 509 U.S. 25, 32, 113 S.Ct. 2475, 2480, 125 L.Ed.2d 22 (1993). He must allege an actual injury resulting from the retaliation, and he has failed to allege that his smoking dorm has caused him serious health problems or "pose[s] an unreasonable risk of serious damage to his future health." *Id.* at 35.

In sum, Ross' retaliation claim fails because of deficient averments in his Complaint and insufficient evidence to carry his burden on summary judgment with regard to causation and actual injury.

## VII. ESTABLISHMENT CLAUSE CLAIM

Ross' last claim is that he was forced to participate in religious activities as part of the Therapeutic Community program. Essentially, his argument is that Defendants violated the Establishment Clause of the First Amendment to the United States Constitution by coercing him, under threat of loss of good conduct allowances, to participate in a program that emphasizes religion. Because the Therapeutic Community program represents state action that has the effect of coercing Ross to accept religion, it violates the Establishment Clause. Yet, because a reasonable prison official would not have known that coerced participation in a prison rehabilitation program that teaches spirituality violates an inmate's Establishment Clause rights, Defendants are entitled to qualified immunity.

### A.

■ The Establishment Clause provides that "Congress shall make no law respecting an establishment of religion ...." U.S. Const. amend. I. It applies to state governments through the Fourteenth Amendment. *Board of Educ. v. Grumet,* 512 U.S. 687, 690, 114 S.Ct. 2481, 2484–85, 129 L.Ed.2d 546 (1994).

A much maligned[5] three prong test first announced by the Supreme Court in *Lemon*

---

5. *See Jesse H. Choper, The Establishment Clause and Aid to Parochial Schools—An Update,* 75 Calif. L.Rev. 5 (1987); William P. Marshall, *"We Know It When We See It": The Supreme Court and Establishment,* 59 S. Cal. L.Rev. 495 (1986);

Michael W. McConnell, *Accommodation of Religion,* 1985 S.Ct. Rev. 1; Philip B. Kurland, *The Religion Clauses and the Burger Court,* 34 Cath. U.L.Rev. 1 (1984).

v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), is usually used to assess whether government action violates the Establishment Clause. See, e.g., Mueller v. Allen, 463 U.S. 388, 394, 103 S.Ct. 3062, 3066–67, 77 L.Ed.2d 721 (1983) (stating that "[t]he general nature of our inquiry in this area has been guided, since the decision in Lemon v. Kurtzman, supra, by the 'three-part' test laid down in that case"); Barghout v. Bureau of Kosher Meat and Food Control, 66 F.3d 1337, 1341 (4th Cir.1995) (applying Lemon ). To pass the Lemon test, a government enactment must first "have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; [and] finally, the statute must not foster, 'an excessive government entanglement with religion.'" Lemon, 403 U.S. at 612–13 (internal citations omitted).

Probably because of the Lemon test's uneasy reception in contemporary Establishment Clause jurisprudence,[6] the two Circuit Courts of Appeals that have faced claims and factual circumstances similar to those presented here have declined to apply Lemon. Instead, they emphasize the non-voluntariness of the prison program at issue and hold that state action by prison authorities coercing an inmate to attend religious meetings is per se unconstitutional. See Warner v. Orange County Dep't of Probation, 115 F.3d 1068, 1074–75 (2d Cir.1996) (holding that coerced attendance at Alcoholics Anonymous meetings that emphasized religion violates the Establishment Clause); Kerr v. Farrey, 95 F.3d 472, 479 (7th Cir.1996) (holding that coerced attendance at Narcotics Anonymous meetings that emphasized religion violates the Establishment Clause).

This bright-line rule focusing on coercion stems directly from the Supreme Court's decision in Lee v. Weisman, 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992). Writing for the majority in Lee, Justice Kennedy declined to apply Lemon to assess whether school prayer at high school graduation ceremonies violates the Establishment Clause. Id. at 587 (stating that "we do not accept the invitation of petitioners and amicus the United States to reconsider our decision in Lemon v. Kurtzman"). Instead, the Court focused on the minimum requirements of the Establishment Clause: "It is beyond dispute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which 'establishes a [state] religion or religious faith, or tends to do so.'" Id. at 587 (emphasis added & brackets in original) (quoting Lynch v. Donnelly, 465 U.S. 668, 678, 104 S.Ct. 1355, 1361–62, 79 L.Ed.2d 604 (1984)) (holding that prayer at high school commencement exercise violates the Establishment Clause because students were psychologically coerced to attend).

Furthermore, as a practical matter, a per se rule focusing on coercion is a permissible substitute for the traditional Lemon test in this context because the mere fact that coercion is exerted by the state is enough to fail the second prong of the test. The second prong of Lemon (whether the primary effect is advancing or inhibiting religion) is interpreted and applied to forbid "at the very least, legislation that constitutes an endorsement of one or another set of religious beliefs or of religion generally." Barghout, 66 F.3d at 1345 (quoting Texas Monthly, Inc. v. Bullock, 489 U.S. 1, 8, 109 S.Ct. 890, 896, 103 L.Ed.2d 1 (1989)). In other words, "[t]he government must appear neutral in matters of religious significance." Id. (citing Grumet, 512 U.S. at 696; Roemer v. Board of Pub. Works of Maryland, 426 U.S. 736, 747, 96 S.Ct. 2337, 2345, 49 L.Ed.2d 179 (1976)). When prison officials coerce an inmate to attend a program teaching religion, the prison officials are certainly endorsing religion over non-religion and are not remaining neutral on matters of religion. Thus, where coercion is present, the program will inevitably fail the Lemon test.

6. See Lamb's Chapel v. Center Moriches Union Free Sch. Dist., 508 U.S. 384, 398–399, 113 S.Ct. 2141, 2149–50, 124 L.Ed.2d 352 (1993) (Scalia, J., dissenting) (attacking the Court's selective application of the Lemon test and comparing it to "some ghoul in a late-night horror movie that repeatedly sits up in its grave and shuffles abroad, after being repeatedly killed and buried …"). Lee v. Weisman, 505 U.S. 577, 644, 112 S.Ct. 2649, 2685, 120 L.Ed.2d 467 (1992) (Scalia, J., dissenting) (stating that "the so-called Lemon test … has received well-earned criticism from many Members of this Court" and citing authorities).

In sum, the Court will apply the *per se* rule adopted by the Second and Seventh Circuits in similar cases. The program at issue, therefore, violates the Establishment Clause if (1) the state has acted, (2) the action amounts to coercion, and (3) the object of the coercion is religious. *See Warner,* 115 F.3d at 1074–75; *Kerr,* 95 F.3d at 479.

Application of this standard leads to the conclusion that the Therapeutic Community program is unconstitutional as it is implemented at Indian Creek. First, it is clear that the state has acted in this case through its employees at the state operated correctional center. Next, the action also amounts to coercion. According to an affidavit proffered by Defendants for summary judgment purposes, "[t]he Therapeutic Community is an involuntary treatment program [and][a]n inmate's refusal to participate in the program will have an effect on his Good Conduct Allowance." Robinson Aff. ¶ 6. When an inmate earns "good time," he may be released sooner; when he loses his "good time," he must remain in prison longer. *See id.* By conditioning "good time" on participation in the Therapeutic Community program, Ross was coerced by Defendants to participate in the program. Finally, the Therapeutic Community program involves religion. "[S]piritual well-being" is incorporated in the program, publications are utilized that refer to God, and the Serenity Prayer is recited. *Id.* Also, by the program director's own admission, "[r]eligion is incorporated into the program so that an inmate can seek out and find his own spirituality." *Id.* ¶ 14. Thus, the object of the program is to teach religion as a coping skill for life. While the program has the noble goal of preparing inmates to successfully reenter society, it impermissibly advances religion by coercing inmates to participate.

Defendants rely on the deference accorded prison authorities in *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). That case, however, dealt with prison interference with an inmate's personal practice of religion. The Supreme Court in *O'Lone* held that prison policies that are reasonably related to legitimate penological concerns do not violate the First Amendment even when they burden inmates in their free exercise of religion.

*O'Lone,* 482 U.S. at 350. *O'Lone* did not address state compulsion to participate in religious activities. Thus, it is distinguishable from the circumstances presented in this case.

**B.**

Even though the act of coercing prisoners to attend meetings where religion is taught violates the Establishment Clause, Defendants are entitled to qualified immunity in this case. Defendants' conduct in the context of a prison rehabilitation program was not an unreasonable violation of Ross' clearly established rights.

**1.**

■ "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The Fourth Circuit has held that summary judgment is the proper vehicle to resolve qualified immunity issues because once a case is allowed to go to trial, the defense is "irreclaimable." *Mensh v. Dyer,* 956 F.2d 36, 39 (4th Cir.1991).

In addressing the issue of qualified immunity,

> it is ... necessary first to identify the specific constitutional right allegedly violated, then to inquire whether at the time of the alleged violation it was clearly established, then further to inquiry whether a reasonable person in the official's position would have known that his conduct would violate that right.

*Collinson v. Gott,* 895 F.2d 994, 998 (4th Cir.1990) (Phillips, J., concurring); *accord Rish v. Johnson,* 131 F.3d 1092, 1095 (4th Cir.1997). While the first two inquiries involve questions of law, "[t]he third, which involves application of *Harlow's* objective test, may sometimes require factual determinations respecting a defendant's conduct and its circumstances, but the test's ultimate application is also a matter of law for the court." *Collinson,* 895 F.2d at 998 (Phillips,

J., concurring) (citing *Anderson v. Creighton*, 483 U.S. 635, 646 n. 6, 107 S.Ct. 3034, 3042, 97 L.Ed.2d 523 (1987)); *see Shaw v. Stroud*, 13 F.3d 791, 801 (4th Cir.) (reviewing the standard of qualified immunity for prison officials), *cert. denied*, 513 U.S. 814, 115 S.Ct. 68, 130 L.Ed.2d 24 (1994); *Slakan v. Porter*, 737 F.2d 368, 376–77 (4th Cir.1984) (same), *cert. denied*, 470 U.S. 1035, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985).

█ In determining the specific right of the plaintiff that was allegedly violated, the right must not exist in a generalized form, but "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640; *see Swanson v. Powers*, 937 F.2d 965, 968 (4th Cir.1991), *cert. denied*, 502 U.S. 1031, 112 S.Ct. 871, 116 L.Ed.2d 777 (1992).

In determining whether the right was clearly established, "[t]he right must be sufficiently particularized to put potential defendants on notice that their conduct is probably unlawful." *Azeez v. Fairman*, 795 F.2d 1296, 1301 (7th Cir.1986). As the *Harlow* Court noted, "[i]f the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Harlow*, 457 U.S. at 818.

█ The third part of the analysis focuses on whether a reasonable officer could have believed that his conduct was unlawful. This

> assessment ... must be made on the basis of information actually possessed at the time by the official or then readily available to him, and in light of the exigencies of time and circumstance in which the official took the action challenged. The tolerance thus accorded by the objective test to "good faith" mistakes of judgment traceable to unsettled law, or faulty information, or contextual exigencies, is deliberately designed to give protection "to all but the plainly incompetent or those who knowingly violate the law" in order to avoid undue inhibition of public officials in the discharge of their discretionary duties.

*Collinson*, 895 F.2d at 998 (Phillips, J., concurring) (quoting *Malley v. Briggs*, 475 U.S.

335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)) (citations omitted); *see Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir.1991) ("The very idea of reasonableness requires that courts accord interpretive latitude to official judgments. If reasonable mistakes were actionable, difficult questions of discretion would always be resolved in favor of inaction, and effective law enforcement would be lost." (citation omitted)).

### 2.

█ Ross has alleged a violation of the Establishment Clause of the First Amendment to the United States Constitution. Defining the right at the appropriate level of inquiry, the Court must determine whether reasonable prison officials would have known at the time of their action that coercing Ross to attend a therapeutic program teaching religion, under threat of loss of good time allowances, violated Ross' rights under the Establishment Clause.

The right of an inmate to be free from coercion to participate in a therapeutic program which utilizes religion was not clearly established at the time of Defendants' acts in this case. The issue has never been squarely addressed by the Supreme Court. Likewise, the Court of Appeals for the Fourth Circuit has not ruled on this issue. The two federal circuit courts that have addressed the issue have done so only recently. Significantly, both courts granted qualified immunity to the official defendants because reasonable officials would not have known that their action in a prison rehabilitation context violated the Establishment Clause. *See Warner*, 115 F.3d at 1077; *Kerr*, 95 F.3d at 480.

Nor would a reasonable prison official in Defendants' shoes have known that their actions violated Ross' Establishment Clause rights in this case. The officials here were acting in good faith to rehabilitate Ross and return him to society as a drug and crime free citizen. The stated goal of the Therapeutic Community program was to teach inmates how to live "a crime free and drug free existence." Robinson Aff. ¶ 3. Based on results from other programs, the officials believed that "substance abusers who developed themselves spiritually have a better

chance of overcoming their addiction to alcohol or drugs." *Id.* ¶ 7. It was not an unreasonable goal for the prison officials to attempt to gain the greatest participation in the program as possible. Thus, at the time of their actions in this case, Defendants were acting rationally in coercing inmates to attend the program in an effort achieve high participation levels. Defendants are therefore entitled to qualified immunity for their actions. Any other conclusion would dissuade official action designed to rehabilitate inmates who need treatment while incarcerated.

### VIII. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment and DISMISSES Ross' Complaint.

Ross is advised that he may appeal from this final order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. Said written notice must be received by the Clerk within thirty (30) days from the date of this order.

IT IS SO ORDERED.