**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ROBERT DAVID BROWN,
               *Plaintiff-Appellee,*

               v.

RICK WIITA,

               *Defendant-Appellant,*

               and

MICHAEL J. BROWN, Sheriff of
Bedford County; J. W. QUARLES;
KEVIN M. ADAMS; UNNAMED AGENTS,
               *Defendants.*

No. 00-1886

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Samuel G. Wilson, Chief District Judge.
(CA-99-275-7)

Argued: February 26, 2001

Decided: April 23, 2001

Before WILKINSON, Chief Judge, TRAXLER, Circuit Judge, and
T. S. ELLIS, III, United States District Judge for the
Eastern District of Virginia, sitting by designation.

---

Reversed and remanded with instructions by unpublished per curiam
opinion.

---

## COUNSEL

**ARGUED:** Jim Harold Guynn, Jr., GUYNN & DILLON, P.C., Roanoke, Virginia, for Appellant. Terry N. Grimes, FRANKLIN COMMONS, P.C., Roanoke, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

In this mistaken-identity arrest case, appellant Lieutenant Rick Wiita of the Bedford County Sheriff's Office (BCSO) appeals from an order of the district court denying his motion for summary judgment on qualified immunity grounds. We reverse.

I.

Appellee, Robert David Brown, brought this action under 42 U.S.C. § 1983 against Lieutenant Wiita and others for alleged violations of his Fourth Amendment rights when he was mistakenly arrested for cocaine distribution on February 24, 1998 by Sergeant Kevin Adams and Deputy J.W. Quarles of the BCSO. Sergeant Adams and Deputy Quarles made the arrest at the direction of Lieutenant Wiita.

The mistaken arrest of Robert David Brown grew out of the undercover operations of another BCSO officer, First Sergeant Ross Sheets. On April 10, 1997, Sergeant Sheets, operating undercover, purchased one-eighth of an ounce of powder cocaine for $250 from a white male known as "Robert Brown." This purchase occurred on Route 24 in Bedford County, Virginia. Sergeant Sheets described the individual selling the cocaine as a white male, approximately 5'9" tall, 28 to 34 years old, with brown hair and brown eyes. Some time later, Sergeant

Sheets attempted unsuccessfully to locate "Robert Brown" in Roanoke, Virginia and was advised that "Robert Brown" had moved to the Smith Mountain Lake area located in Bedford County, Virginia.

On February 6, 1998, Lieutenant Wiita testified before a Grand Jury that a "Robert Brown" had been involved in a hand-to-hand sale of cocaine with Sergeant Sheets. As a result of this testimony, the Grand Jury returned an indictment for "Robert Brown," and the Bedford County Clerk's Office then issued a capias for this person's arrest. The capias, however, included neither "Robert Brown's" physical description, nor his address.

Lieutenant Wiita then began an investigation to acquire additional information that would enable him to locate and arrest the "Robert Brown" who had engaged in the drug transaction with Sergeant Sheets on April 10. At this point, Lieutenant Wiita knew only the information provided by Sergeant Sheets, namely, "Robert Brown's" physical description and the fact that "Robert Brown" had recently moved to the Smith Mountain Lake area.[1] Lieutenant Wiita testified that after receiving the capias, he instructed a dispatcher to check the Virginia Computer Information Network ("VCIN") for additional information about the suspect. The VCIN search, which included the suspect's name and the physical description provided by Sergeant Sheets, identified only one individual—a Robert David Brown who resided on Smith Mountain Lake Parkway. Significantly, the VCIN database described Robert David Brown as a white male, 5'7" tall, thirty-five years of age, with brown hair and brown eyes. And, Lieu-

---

[1]In the course of oral argument, appellee's counsel mistakenly contended that at the time Lieutenant Wiita directed his officers to execute the capias, the only information he had was the suspect's name—"Robert Brown." The record reflects otherwise, showing instead that prior to seeking the indictment, Lieutenant Wiita had not just the suspect's name, but also Sergeant Sheets's physical description of the "Robert Brown" and the fact that this person had recently moved to the Smith Mountain Lake area. Moreover, the record reflects that by the time he directed that the arrest be carried out, Lieutenant Wiita had also determined from a computer search that there was only one "Robert Brown"—i.e., appellee Robert David Brown—who lived in the Smith Mountain Lake area and matched the suspect's description. (J.A. at 226-28).

tenant Wiita further testified that he believed that the information from the VCIN search also revealed that this individual had recently moved to the Smith Mountain Lake area and that if there had been other Robert Browns in that area, he would have expected the VCIN search to have identified these other individuals. Based on this information—the description that matched Sheets's description and the address in the Smith Mountain Lake area—Lieutenant Wiita felt certain that the "Robert Brown" named in the indictment was the Robert David Brown identified by the VCIN search. Accordingly, on February 24, 1998, Lieutenant Wiita directed Sergeant Adams and Deputy Quarles to arrest Robert David Brown.[2] The officers proceeded to Robert David Brown's residence on Smith Mountain Lake Parkway and arrested appellee for distribution of cocaine. Throughout the arrest, Robert David Brown maintained his innocence and told the officers they had the wrong person. Nevertheless, the officers took appellee into custody and brought him before a magistrate, who released him on bond. On March 5, 1998, the BCSO was informed that the wrong person had been arrested. Lieutenant Wiita promptly contacted Sergeant Sheets, who was assisting the DEA with undercover drug operations in Florida, and faxed him appellee's picture. Sergeant Sheets confirmed that Robert David Brown was not the "Robert Brown" from whom he had purchased drugs. Accordingly, on March 26, 1998, all charges against Robert David Brown were dismissed.

Thereafter, Robert David Brown filed the instant § 1983 action against Lieutenant Wiita, Sheriff Michael Brown, Deputy Quarles, and Sergeant Adams for alleged violations of his Fourth, Fifth, and Fourteenth Amendment rights. State claims for malicious prosecution and false imprisonment were also included. Defendants filed a motion to dismiss portions of the amended complaint. In resolving this motion, the district court dismissed the § 1983 claim against Sheriff

---

[2]Shortly after receiving the VCIN search results, Lieutenant Wiita also requested a photograph of Robert David Brown from the Virginia Department of Motor Vehicles. At the evidentiary hearing, Lieutenant Wiita testified that because these photographs generally take four to six weeks to obtain and because he felt certain that he had located the individual identified in the capias, he did not wait to receive this photograph before arresting the appellee.

Brown in his official capacity. *See Brown v. Brown*, C.A. No. 99-275-7 (W.D. Va. Feb. 22, 2000). Defendants then moved for summary judgment, which was granted in part and denied in part. The district court granted defendants' summary judgment motion on (i) all claims against Quarles and Adams, (ii) the § 1983 and malicious prosecution claims against Sheriff Brown, and (iii) the malicious prosecution claim against Lieutenant Wiita. The district court denied summary judgment on the § 1983 and false imprisonment claims against Lieutenant Wiita, ruling that he was not entitled to qualified immunity. *See Brown v. Brown*, C.A. No. 99-275-7 (W.D. Va. Jun. 12, 2000) (granting in part and denying in part defendants' motion for summary judgment). Lieutenant Wiita appeals this decision, which we review *de novo. See Mensh v. Dyer*, 956 F.2d 36, 39 (4th Cir. 1992).

## II.

The purpose of qualified immunity is to ensure that government officials performing discretionary functions can "perform their duties free from the specter of endless and debilitating lawsuits." *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991). Without qualified immunity, there is a substantial risk that the fear of personal liability and harassing litigation will "unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Accordingly, government officials are entitled to qualified immunity for civil damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992). Thus, Lieutenant Wiita is entitled to qualified immunity if a reasonable person in his position would not have appreciated that his conduct would violate Robert David Brown's rights.

Appellee argues that Lieutenant Wiita is not entitled to qualified immunity because he failed to take additional steps to verify that Robert David Brown was the "Robert Brown" identified in the capias. Specifically, he argues that Lieutenant Wiita should have (i) waited for the photograph he had ordered from the Department of Motor Vehicles, (ii) contacted Sergeant Sheets and the Commonwealth's attorney, or (iii) consulted local telephone directories before directing Robert David Brown's arrest.

The reasonableness of Lieutenant Wiita's belief that he was arresting the correct person must be judged by an objective standard in light of the facts he possessed at the time of the arrest. *See Anderson*, 483 U.S. at 640; *Rowland v. Perry*, 41 F.3d 167, 173 (4th Cir. 1994) (qualified immunity inquiry "must be filtered through the lens of the officer's perception at the time of the incident in question"). In other words, the qualified immunity reasonableness determination is based on evidence reasonably available to the police officer and in light of any exigencies present. *See Pritchett*, 973 F.2d at 312-13. And importantly, this inquiry must not result in a "second-guessing" of the officer's actions "with the benefit of 20/20 hindsight." *Rowland*, 41 F.3d at 174. This is so because officers executing a warrant are "not required to investigate independently every claim of innocence," or to be absolutely certain that the person arrested is the person identified in the warrant. *Mensh*, 956 F.2d at 40. Instead, "sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment." *Hill v. California*, 401 U.S. 797, 804 (1971). Mistaken identity errors, of course, will inevitably occur from time to time, but the law sensibly recognizes that "[n]ot every mix-up in the issuance of an arrest warrant, even though it leads to the arrest of the wrong person . . . automatically constitutes a constitutional violation for which a remedy may be sought under . . . [section] 1983." *Thompson v. Prince William County*, 753 F.2d 363, 364 (4th Cir. 1985). In sum officers who mistakenly arrest the wrong person are immune from § 1983 liability unless they act in an objectively unreasonable manner in the circumstances, as for example, in failing to investigate readily available exculpatory evidence. *See, e.g., Clipper v. Takoma Park*, 876 F.2d 17 (4th Cir. 1989).

These principles, applied here, compel the conclusion that Lieutenant Wiita's belief that Robert David Brown was the individual identified in the arrest warrant was objectively reasonable in light of the circumstances as they appeared to Lieutenant Wiita at the time he ordered appellee's arrest. Those circumstances were (i) that Robert David Brown and the individual identified in the capias—"Robert Brown"—shared the same first and last names, (ii) that the physical description of "Robert Brown" provided by the undercover officer matched quite closely Robert David Brown's description in the VCIN database, (iii) that consistent with information concerning "Robert Brown," Robert David Brown lived in the Smith Mountain Lake area,

and (iv) that the VCIN search identified only one individual with the first name, "Robert," and the last name, "Brown," matching the physical description of the suspect "Robert Brown" and living in the Smith Mountain Lake area. Based on this evidence, it was objectively reasonable for Lieutenant Wiita to conclude that Robert David Brown was the "Robert Brown" identified in the capias, even though this conclusion proved later to be mistaken.

Nor is this a novel result; several courts analyzing mistaken identity arrests have granted qualified immunity on substantially similar facts. For example, in *Hill v. California*, the Supreme Court found that the officers' belief that the person mistakenly arrested was the suspect was reasonable in light of the circumstances, namely that the individual arrested fit the physical description of the suspect, was in the suspect's home, and could not provide a convincing explanation for his presence in the suspect's home. *See Hill*, 401 U.S. at 802-04. Significantly, the arrest was held objectively reasonable despite the fact that the individual arrested maintained his innocence and produced identification that supported his claim of mistaken identity. In this respect, the Supreme Court noted that "aliases and false identifications are not uncommon." *Hill*, 401 U.S. at 803. Similarly, in *Thompson v. Prince William County*, we upheld the reasonableness of an officer's belief that the person he arrested was the individual identified in the arrest warrant despite discrepancies in height, weight, eye color, and hair color. There, we held the officer's belief was reasonable because the suspect and the person arrested shared the same first name and had a close connection with the registered vehicle at issue in the case. *See Thompson*, 753 F.2d at 365. Here, because Lieutenant Wiita had substantially the same amount of information as the officers in *Hill* and *Thompson*, he is entitled, as they were, to qualified immunity.[3]

---

[3]Our sister circuits have reached similar results. For example, in *Blackwell v. Barton*, 34 F.3d 298 (5th Cir. 1994), the Fifth Circuit granted qualified immunity where the officer reasonably believed that he was arresting the suspect because the person he arrested was of the "same height and weight, sex, race, age, nickname, and [was present] at the location where he expected to find [the suspect]." *Id*. at 304; *see also United States v. Zipperian*, Crim. No. 91-61-1-JKS, 977 F.2d 594 (9th Cir. Sep. 22, 1992) (unpublished) (noting that officers' belief that they

Moreover, that Robert David Brown protested his innocence or that Lieutenant Wiita could have waited to receive the Department of Motor Vehicles photograph does not detract from the reasonableness of Lieutenant Wiita's belief that he was arresting the correct person.[4] As noted, an officer is not required to "exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt before probable cause is established." *Torchinsky*, 942 F.2d at 264. It will always be possible to take additional investigatory steps. But the law sensibly does not determine reasonableness based on "second-guessing . . . with the benefit of 20/20 hindsight."[5] For example, in *Mensh*, we upheld the reasonableness of an arrest where officers mistakenly arrested the father of the suspect, even though the officers could have waited for clearer photographs or secured an additional physical description of the suspect before executing the warrant. *See Mensh*, 956 F.2d at 37. Similarly, in the case at bar, while Lieutenant Wiita might have avoided the mistake by conducting additional inves-

---

had arrested the suspect was reasonable in light of "the circumstances surrounding the arrest, including the physical similarities between [the defendant and the suspect], the matching descriptions of the car and the pit bull, the fact that the arrest occurred at night, and the actions of [the defendant]"); *Gero v. Henault*, 740 F.2d 78, 85 (1st Cir. 1984) (noting that facts available to officer, including identification by victim, provided "compelling reasons for the police reasonably to believe" that the individual he arrested was the suspect).

[4]In this respect, the instant facts are easily distinguished from the facts in *Clipper v. Takoma Park*, 876 F.2d 17 (4th Cir. 1989). In *Clipper*, significantly, the officers were in possession of photographs that, if viewed, would have established that the individual arrested was not the suspect. In addition, the officers, in *Clipper*, failed to interview individuals, whose names were provided by the individual arrested, and who would have verified that the individual was with them at the time the crime was committed. *Clipper*, unlike the case at bar, was an instance of an officer who unreasonably failed to investigate readily available exculpatory evidence.

[5]*Rowland*, 41 F.3d at 174; *see also Thompson*, 753 F.2d at 365 ("[I]t simply demands too much to expect police officers on the basis of slight discrepancies of height . . . and weight or in color of eyes . . . and hair . . . to abandon obtention or execution of a warrant on someone who, for other strong indications . . ., meets the warrant's description.").

tigation, the law does not require him to do so where, as here, it was reasonable for him to conclude on the basis of the information he had that Robert David Brown was the "Robert Brown" identified in the capias.

## III.

For the foregoing reasons, Lieutenant Wiita is entitled to qualified immunity, and accordingly, the district court's denial of his motion for summary judgment is reversed, and the matter is remanded with instructions to enter summary judgment for Lieutenant Wiita.[6]

*REVERSED AND REMANDED WITH INSTRUCTIONS*

---

[6]Lieutenant Wiita is also entitled to qualified immunity with respect to the state false imprisonment claim, as it is settled Virginia law that an officer cannot be found liable for false imprisonment if he acted "in good faith and with reasonable belief in the validity of the arrest." *See DeChene v. Smallwood*, 226 Va. 475, 479 (1984).